# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Jeffrey S.,**
**Respondent Below, Petitioner**

**vs.)  Nos. 11-1453 and 12-0200** (Jefferson County 10-D-389)

**Jennifer S.,**
**Petitioner Below, Respondent**

**FILED**

January 25, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jeffrey S., *pro se*, appeals two separate orders of the Circuit Court of Jefferson County.[1] In its October 3, 2011, order, the circuit court denied petitioner's appeal of the June 21, 2011 order of the Family Court of Jefferson County denying his motion to hold respondent in contempt, his second motion for Family Court Judge Greenburg's recusal, and his motion to have Fred Jay Krieg, Ph.D., ordered to attend the custody hearing. The order also made the final custodial allocation where respondent was awarded exclusive custodial allocation and sole decision-making responsibilities regarding the parties' minor children and where petitioner was denied any allocation or contact with the minor children. In its January 17, 2012 order, the circuit court denied petitioner's appeal of the family court's May 16, 2011 final divorce order in which the court granted the parties a divorce and addressed issues other than the final custodial allocation. Respondent Jennifer S., by Georgiana M. Pardo, her attorney, filed response briefs in both of petitioner's appeals, to which petitioner filed reply briefs.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Revised Rules of Appellate Procedure.

The parties were married on April 30, 1994, in Colombia, Maryland. They last cohabited together as husband and wife on October 13, 2010, in Jefferson County, West Virginia. The family court found that respondent was a bona fide resident of Jefferson County for more than one year preceding the filling of this divorce action.

---

[1] "We follow our past practice in . . . cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dept. of Human Services v. Cheryl M.,* 177 W.Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987).

-1-

Three children were born during the parties' marriage.[2] The family court found that both parties waived any claim to spousal support and that "because each of the parties' minor children receives $781.00 per month in social security payments stemming from [respondent]'s and [petitioner]'s disabilit[ies], [petitioner] will not be liable for any additional child support payments, in accordance with the West Virginia Child Support guidelines."[3] The family court noted that the level of child support was subject to its continuing jurisdiction.

The family court further noted that no report had yet been received from Fred Jay Krieg, Ph.D., pursuant to its custody evaluation order. Consequently, the family court bifurcated the issue of the final allocation of custodial responsibility for the parties' three minor children from the other issues in the divorce action ruling that the final custodial allocation would be determined at a later date.[4]

The family court proceeded to adjudicate all other issues and found that "[petitioner] has on the record admitted to . . . irreconcilable differences." Therefore, the family court granted the parties a divorce pursuant to West Virginia Code § 48-5-201.

The family court further ordered that respondent shall continue to maintain the parties' minor children on her health insurance so long as it is available to her at a reasonable cost and that respondent shall pay the first $250 in uninsured medical expenses per year for each of the children. Above the first $250, the family court ordered respondent shall pay 58%, and petitioner shall pay 42%, of any remaining uninsured medical expenses per year for each of the children. In making this determination, the family court noted that respondent's monthly income from social security and employment disability was $2,672 while petitioner's monthly social security disability benefits was $1,917.

The family court ordered that respondent shall deliver certain items of petitioner's personal property to his address in Sterling, Virginia, on May 21, 2011, at 3:00 p.m., and that petitioner's adult daughter will be present to take possession of the items.[5] The family court gave respondent exclusive use and possession of the former marital home and noted that the home was in foreclosure. The family court further ordered that each party shall be the sole owner of the

---

[2] The present ages of the parties' three children are 17, 14, and 5.

[3] Although it would seem against his interests, petitioner argues on appeal that the children's social security payments should be going to him instead of them.

[4] All issues other than the final custodial allocation were determined at a hearing on April 27, 2011, where respondent appeared in person and by counsel and where petitioner appeared *pro se*.

[5] Previously, respondent had been ordered to deliver petitioner's personal property to outside of the residence of his adult son on February 8, 2011. The February 8, 2011, attempt to deliver petitioner's personal items to him was the subject of a motion to hold respondent in contempt filed on February 10, 2011. The family court did not hold a hearing on the motion for contempt. The family court did consider a subsequent motion for contempt filed by petitioner on May 24, 2011.

automobiles then in his or her possession.

Finally, the family court ordered that neither party shall have any contact with the other whatsoever and that this prohibition from contacting each other shall be enforceable through the contempt powers of the court. The family court set the determination of the allocation of custodial responsibility for the parties' minor children for hearing on May 12, 2011.

Petitioner requested a continuance of the custodial allocation hearing because of "[h]is alleged medical condition" and "[n]ot having received Dr. Krieg's report." The family court continued the hearing to May 31, 2011, and mailed both parties a copy of Dr. Krieg's report. The family court noted that its order continuing the hearing "will be the only notice of the rescheduled hearing." A notation at the bottom of the order indicates that copies of the order were mailed to petitioner and respondent's counsel on May 18, 2011.

Respondent appeared in person and by counsel for the May 31, 2011 custodial allocation hearing, while petitioner did not appear. At the hearing, the family court also addressed a number of motions filed by petitioner and one motion filed by respondent. The family court denied petitioner's motion to hold respondent in contempt for not delivering his personal items because, as he failed to appear, petitioner could not meet his burden of proving respondent's noncompliance with the court's prior order.

Petitioner filed a second motion for the recusal of Judge Greenberg. The family court noted that the court transmitted petitioner's first such motion to the Chief Justice of the West Virginia Supreme Court of Appeals, stating that Judge Greenberg declined to voluntarily recuse himself, and that the Chief Justice entered an administrative order on April 15, 2011, finding that there was insufficient evidence to support Judge Greenberg's disqualification. The family court found that petitioner did not directly transmit a copy of his second motion to Judge Greenberg within the twenty-one days required by Rule 17.01(a) of the West Virginia Trial Court Rules.[6] Thus, the family court determined that petitioner's second motion for Judge Greenberg's recusal was untimely.

The family court noted that Rule 17.01(e) gave the court discretion to deny or grant an untimely filed motion. The family court denied petitioner's second motion for Judge Greenberg's recusal stating that Judge Greenberg declined to voluntarily recuse himself for the same reasons the judge declined to recuse himself when petitioner filed his first recusal motion. The family court noted that if a recusal motion is denied, Rule 17.01(e)(2) gives the moving party the opportunity to make a record on the issue but that petitioner failed to appear "at this duly-noticed final custody hearing."

The family court also denied petitioner's motion to have Dr. Krieg appear at the custodial allocation hearing finding the motion inappropriate "because [petitioner] did not avail himself of the [West Virginia] Rules of Civil Procedure to subpoena Dr. Krieg to secure his presence." The family court noted that at the April 27, 2011 hearing, it advised both parties that any party wishing

---

[6] The family court only learned of the second recusal motion the day of the May 31, 2011 hearing.

to secure Dr. Krieg's presence at the custodial allocation hearing had the responsibility of subpoenaing him. The family court also noted that petitioner had engaged in "clearly abusive" discovery by serving Dr. Krieg with interrogatories and requests for production of documents after being informed by the court that "discovery may be had only upon an order of the Court."

As to the motion filed by respondent for attorney's fees, the family court stated that the court would have been inclined to look favorably upon the motion if not for the fact that it previously told petitioner on the record that the allocation of custodial responsibility would be the only issue that would be addressed at the May 31, 2011 hearing. Thus, the family court denied respondent's motion for attorney's fees.

As to the custodial allocation, the family court noted that the legislature has enacted a rebuttable presumption that a parent who has engaged in domestic violence shall not be allocated custodial or decision-making responsibility. *See* W.Va. Code §§ 48-9-209(a)(3) and (c). In Case No. 10-DV-250, respondent obtained a final domestic violence protective order against petitioner and neither party appealed.[7]

The family court noted that on May 9, 2011, the court received Dr. Krieg's report "along with two letters from [petitioner] date May 7th and May 9th addressed to Dr. Krieg, stating among other things that [petitioner] had requested a letter from his doctors on the status of his medical condition(s), had not been able to obtain anything yet, but 'will in good faith follow up.'" The family court found that petitioner never provided the requested documents confirming his medical conditions. The family court further found that Dr. Krieg's report contained the following findings: (1) respondent does not present any parental risk factors and is concerned about the emotional, physical, medical, and psychological well-being of the parties' children; (2) the most accurate diagnosis for petitioner is narcissistic personality disorder with a secondary diagnosis of rule-out factitious disorder; (3) the parties' oldest children wish to live with respondent;[8] (4) petitioner is suffering from severe psychiatric difficulties and, as a result of those difficulties, petitioner does not understand the effects of his behavior on respondent and on the parties' children; (5) petitioner is in need of psychiatric and psychological treatment and, until he receives that treatment, he represents a risk to his family; and (6) all three of the parties' children should be placed in the home of respondent who should be their primary caretaker and sole decision-maker.

The family court noted that respondent's testimony, which was un-rebutted, was that she performed 99% to 100% of caretaking and parenting functions prior to the parties' separation. Respondent testified as to ten acts of abuse by petitioner prior to separation, with the ten instances detailed in the family court's order. The family court concluded that respondent's testimony was credible and that between the parties, "[respondent] has performed almost all the caretaking and parenting functions for the three children." The family court noted that in previous testimony, petitioner stated that he was not seeking primary custody, but only visitation with the children.

---

[7] In Magistrate Court No. 11-M-119, to which petitioner refers on appeal, he pled no contest to harassment after being charged with violating a protective order.

[8] Due to her age, Dr. Krieg did not interview the parties' youngest child.

The family court noted that under West Virginia Code § 48-9-209, once the court has determined that a parent has engaged in domestic violence, the court may not allocate custodial or decision-making responsibility to the parent who is found to have engaged in domestic violence unless the parent meets his burden of proving that any such allocation to him will not endanger the children or the other parent. The family court found that having presented no evidence, '[petitioner] has not met his burden of proof in this regard." The family court accordingly ordered that "[respondent] shall have exclusive custodial allocation and sole decision making responsibilities for the parties' minor children" and that "[petitioner] shall have no custodial allocation or contact with [respondent] or the parties' minor children."

Petitioner appealed the family court's May 16, 2011 final divorce order and the family court's June 21, 2011 order denying his various motions and making the final allocation of custodial responsibility. The circuit court considered petitioner's appeal of the June 21, 2011 order first. The circuit court noted that as an appellate court, the court may disturb the family court's decision only for an abuse of discretion or because of clearly erroneous findings of fact. *See* W.Va. Code § 51-2A-14(c). In denying petitioner's appeal of the family court's June 21, 2011 order, the circuit court addressed petitioner's various arguments. Of particular note, the circuit court rejected petitioner's argument that he was not given notice of the custodial allocation hearing on May 31, 2011:

> . . . [T]he record shows that the hearing was continued on [petitioner]'s request; that the Order was entered on May 17, 2011; and that Deputy Clerk Rickard indicated that the order was mailed with "2 CC G. Pardo Jeff Schrembs 05/18/2011' on the Order. There is no indication in the record that the mail was returned to the Court.[9]

The circuit court also noted that the family court found respondent's testimony regarding

---

[9] On appeal, petitioner contends that the family court erred in making the final allocation of custodial responsibility, in part, because, according to him, he did not receive notice of the May 31, 2011 hearing. Petitioner does not offer an explanation of why he did not receive the notice that was mailed to him. As reflected on the video recording of the May 31, 2011 hearing, between approximately 3:40:19 and 3:41:15, the family court surmised that petitioner did not appear for the hearing in the expectation that his second recusal motion would prevent the court from proceeding with the hearing. The family court noted that while petitioner directly submitted a copy of his first recusal motion to Judge Greenberg, he did not do that with his second such motion. *See* Rule 17.01(a)(3), W.V.T.C.R. (providing that a motion for disqualification "*shall*: . . . (3) Be submitted by copy directly to the Judge") (emphasis added). Petitioner's various motions that the family court addressed at the May 31, 2011, hearing, were all filed by him during May of 2011 and all listed petitioner's address as "21800 Town Center Plaza 266a # 275, Sterling, VA 20164." That is the same address the family court had for petitioner during May of 2011. Therefore, after careful consideration, this Court concludes that the record does not support petitioner's contention that he did not receive notice of the May 31, 2011 hearing.

petitioner's domestic violence reliable and that "[it] did not preside over this case and cannot re-evaluate the credibility of the witnesses absent abuse of discretion or clearly erroneous findings of fact" The circuit court also concluded that the family court did not err in relying on Dr. Krieg's evaluation report.[10]

Petitioner's appeal of the May 16, 2011, final divorce order was transferred from the circuit court to this Court on September 22, 2011, pursuant to West Virginia Code § 51-2A-14(f). On January 6, 2012, this Court remanded the appeal to the circuit court for a ruling within ten days of the receipt of its remand order consistent with *State ex rel. Silver v. Wilkes*, 213 W.Va. 692, 584 S.E.2d 548 (2003). On January 17, 2012, the circuit court entered an order denying petitioner's appeal of the family court's May 16, 2011, final divorce order, giving the following reasons:

> 1. The Family Court's finding – the parties' minor children receive the $781 as a result of both [respondent]'s and [petitioner]'s disability – is supported by the record. Therefore, the Family Court did not abuse its discretion or made [sic] a clearly erroneous finding of fact;
>
> 2. [Petitioner] cannot use this Divorce Order to contest an outcome of a domestic violence case against [respondent]. See also DVD of 04/27/11 hearing 10-D-389 at 1:42:45 to 1:44:30;[11] and
>
> 3. The Court holds that all other issues in the Appeal were either addressed in the Court's October 3rd, 2011[,] Order are moot, or are meritless for purposes of this appeal.

Petitioner now appeals the circuit court's January 17, 2012 ,order denying his appeal of the family court's May 16, 2011, final divorce order and the circuit court's October 3, 2011 order denying his appeal of the family court's June 21, 2011 order denying his various motions and making the final allocation of custodial responsibility. The appeals have been consolidated for purposes of consideration and decision.

---

[10] Among petitioner's arguments to the circuit court was his contention that the family court did not allow him to introduce evidence that would have discredited both respondent and Dr. Krieg. On appeal to this Court, petitioner has filed numerous motions to supplement the record. Among these filings were a motion to supplement with evidence in "[respondent's] own handwriting, her own voice, and her own emails," which would have allegedly "contradict[ed] 'point for point' every false allegation Respondent has made against Petitioner," and a motion to supplement with evidence concerning certain professional disciplinary actions against Dr. Krieg and an alleged rebuke of Dr. Krieg in a court proceeding. This Court has refused these, and all other, motions to supplement the record filed by petitioner. Accordingly, to the extent that petitioner relies on such evidence in his arguments, his arguments have been disregarded.

[11] This Court has reviewed the video recordings of both the April 27, 2011, and the May 31, 2011 hearings as well as of a hearing conducted on February 7, 2011, at which both parties appeared.

Petitioner raises numerous assignments of error across a myriad of issues, to which respondent has responded. The family court's many rulings, and the factual findings supporting those rulings, are all entitled to deference:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). As indicated by the circuit court, the family court was also entitled to deference to the extent that the family court relied on determinations it made of the parties' credibility. *See State v. Guthrie*, 194 W.Va. 657, 669 n. 9, 461 S.E.2d 163, 170 n. 9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). With these standards in mind, and after careful consideration of the parties' arguments and the record, this Court concludes that the circuit court's denials of petitioner's appeals of the family court's May 16, 2011, final divorce order and of the family court's June 21, 2011, order, denying various motions filed by him and making the final custodial allocation, should be affirmed.

For the foregoing reasons, we find no error in the decisions of the Family Court of Jefferson County. Accordingly, the October 3, 2011, and the January 17, 2012 orders of the Circuit Court of Jefferson County denying petitioner's appeals of the family court's June 21, 2011 order, and of the family court's order of May 16, 2011, are affirmed.

Affirmed.

**ISSUED:** January 25, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II